UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ASHLEY VON BRITTON, | : | No. 3:14-cv-00133 (MPS) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, et al. | : | |
| Defendants. | : | |

**<u>Ruling on Motion to Dismiss</u>**

Plaintiff Ashley Von Britton alleges that Osborn Correctional Institution ("Osborn"),

Carol Chapdelaine (the warden at Osborn during Von Britton's term of incarceration), the

University of Connecticut Health Center, and at least ten medical doctors (together

"Defendants"), failed to diagnose him with diabetes, which resulted in the need to amputate his

left leg.

In Count One, Von Britton alleges that Defendants' failure to provide him with adequate

medical care violated 42 U.S.C. § 1983. Von Britton also brings state law claims for intentional

infliction of emotional distress (Count Two), negligent infliction of emotional distress (Count

Three), and negligence (Count Four). Defendants move to dismiss Von Britton's Second

Amended Complaint under Rules 12(b)(1), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil

Procedure. (ECF No. 35.) The Court GRANTS Defendants' motion and dismisses Von Britton's

Second Amended Complaint ("SAC").

**I.     BACKGROUND**

The following facts are taken from the SAC and are accepted as true for the purpose of

deciding Defendants' motion to dismiss.

Von Britton is a resident of New Haven, Connecticut. (SAC, ECF No. 33 ¶ 3.) At some unknown time he entered Osborn as an inmate. (*Id*. ¶ 3.) Defendant Carol Chapdelaine was the warden of Osborn from 2009 through 2014 (*id*. ¶ 5), and "generally controlled, managed, and oversaw any and all decisions as to medical care, transport, and treatment" at Osborn. (*Id*. ¶ 30.) The University of Connecticut ("UCONN") Health Center "is the designated provider of medical care to the State of Connecticut Department of Corrections" ("DOC") (*id*. ¶ 6), and the place where Von Britton alleges "many of the treatments, and failures to treat occurred." (*Id*. ¶ 31.) Von Britton alleges that Leslie Millar Scout, Edward L. Pesanti, Cary Rob Freston, Chukwudi Ozo-onyali, Frederick L. Altice, Ganpat S. Chouhan, John Gittzus, Omprakash Pillai, Robert Bruce, Peter Immordino, and "several other unnamed" individuals were doctors at the UCONN Health Center and provided medical care to Von Britton (*id*. ¶¶ 7-17) "during his term of incarceration." (*Id*. ¶ 20.) Von Britton is suing these medical doctors in their individual and official capacities. (*Id* ¶ 7-17.)

Prior to his incarceration at Osborn, Von Britton was diagnosed with HIV. (*Id*. ¶ 18) He had never been diagnosed with diabetes. (*Id*. ¶ 19.) Upon entering Osborn, Von Britton informed the DOC of his "physical condition," and underwent a medical exam. (*Id*. ¶ 21.) "Due to Von Britton's HIV diagnosis he was at the [UCONN Health Center] clinic . . . for treatment on a regular basis, and was repeatedly in contact with the medical professionals at the prison clinic." (*Id*. ¶ 22.) Despite these regular visits, Von Britton alleges that "he was never subsequently given another physical examination nor was he given a glucometer test or diabetes screening as part of any other exam." (*Id*. ¶ 23.) Von Britton alleges that he "was subjected to the pains of a terribly high blood sugar level . . . which include but are not limited to dryness of mouth, frequent urination, muscular pain, headaches, dizziness, organ failure, low circulation, loss of sensation

and numbness." (*Id.* ¶ 37.) It is not clear from the SAC when Von Britton experienced these symptoms.

On January 31, 2011, Von Britton was released from Osborn. (*Id.* ¶ 24.) Shortly after his release, at some unspecified time in February 2011, he became ill and "was rushed to the hospital." (*Id.* ¶ 25.) The hospital physicians told Von Britton that "his blood sugar level was 1400 and he was diagnosed with diabetes." (*Id.* ¶ 26.) Because Von Britton had "an extremely large number of blood clots in his left leg," the physicians informed Von Britton that they needed to amputate his left leg—below the knee—immediately. (*Id.* ¶ 27.) Doctors amputated the leg in February 2011. (*Id.* ¶ 28.)

Von Britton must now use a wheelchair and alleges that he "has suffered severe emotional distress as a result of his current condition and the way he is now treated by others." (*Id.* ¶ 29.) He further alleges that his initial medical exam at Osborn "should have included a screening for diabetes and high blood sugar as part of its standard operating procedure." (*Id.* ¶ 29.) Von Britton claims that, as a result of Defendants' "denial of proper medical treatment," he "was permanently deprived of both his liberty without due process of law, and his right to equal protection of the laws . . . in violation of the Fifth, Eight[h] and Fourteenth Amendments of the Constitution . . . ." (*Id.* ¶ 37.) Von Britton "believes that the only viable rationale for said denial of treatment was . . . an ongoing plan to cut costs with regard to the treatment of prisoners." (*Id.* ¶ 45.)

Von Britton filed his original complaint against the State of Connecticut and Osborn on January 31, 2014. (ECF No. 1.) His First Amended Complaint ("FAC"), filed on May 14, 2014, removed the State of Connecticut as a defendant, and replaced it with two new defendants: Chapdelaine and UCONN Health Center. (ECF No. 7.) Defendants filed a motion to dismiss the

FAC on February 13, 2015. (ECF No. 27.) After Defendants filed their motion to dismiss, the Court gave Von Britton an opportunity to file a second amended complaint "to address the alleged defects discussed in Defendants' memorandum of law," (ECF No. 29), and he did so on May 11, 2015. (SAC, ECF No. 33.) In addition to the defendants named in the first amended complaint, the SAC added the medical doctor defendants. (*Id.* ¶ 37.) The Court then denied Defendants' first motion to dismiss as moot. (ECF No. 36.) On June 15, 2015, Defendants renewed their motion to dismiss the SAC under Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 35.) Von Britton did not respond to Defendants' renewed motion to dismiss, and the deadline for doing so—July 2, 2015—has long since passed.

In Count One, Von Britton seeks judgment in his favor, compensatory damages in the amount of $5,000,000 and punitive damages of $5,000,000, plus costs, fees, and any "such actual relief deemed to be just and equitable." (SAC ¶ 37.) In Counts Two, Three, and Four, Von Britton alleges state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence, respectively (*id.* ¶¶ 38-53), for which he also seeks money damages. (*Id.* ¶¶ 45, 48, 53.)

## III.   DISCUSSION

### A.  Rule 12(b)(1) Lack of Subject Matter Jurisdiction Over Claims Against State

In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But [w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir.2014) (citations and quotation marks omitted).

Defendants argue that the Court lacks subject matter jurisdiction over Von Britton's claims because Defendants are immune from suit under the Eleventh Amendment of the Constitution. (Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Br."), ECF No. 27-1 at 3-5.) The Court agrees that because Von Britton's claims seek damages and not injunctive relief, they are precluded by the Eleventh Amendment, which "bars all section 1983 claims for money damages against a state or state agency unless the state waives, or Congress has abrogated, its immunity." *Mele v. State of Connecticut*, No. 3:06-CV-1571 (JCH), 2007 WL 484618, at *3 (D. Conn. Feb. 6, 2007) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 66 (1989)); *Greene v. Connecticut*, No. 3:04CV658 (MRK), 2004 WL 2713226, at *1 (D. Conn. Nov. 22, 2004) ("Eleventh Amendment immunity . . . extends to state agencies, state branches of government, and other arms of the state unless the state has consented to suit or Congress has properly overridden the states' immunity."). Neither exception applies here. It is well-settled that "42 U.S.C. § 1983 does not override the eleventh amendment," *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citations omitted), "and Connecticut has not waived its sovereign immunity under" Section 1983. *Martires v. Connecticut Dep't of Transp.*, 596 F. Supp. 2d 425, 446 (D. Conn. 2009) (citation omitted). "UCONN Health Center is a state agency," *Nelson v. Lantz*, No. 3:05CV273 (SRU) (WIG), 2006 WL 905355, at *3 (D. Conn. Apr. 7, 2006), and Osborn is operated by the Connecticut Department of Corrections, a state agency. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (plaintiff's § 1983 claims for damages against a state prison facility, among other defendants, were barred by the Eleventh Amendment); *Proctor v. Vadlamudi*, 992 F. Supp. 156, 158 (N.D.N.Y. 1998) (defendant New York correctional facility "is clearly an agency of the state, and as such, is entitled to sovereign immunity"). Therefore, Von Britton's claims for monetary damages from Osborn and UCONN

Health Center, and from Chapdelaine in her official capacity as warden of Osborn, are dismissed.[1]

### B.  Rule 12(b)(5) Lack of Service on the Medical Doctor Defendants

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987)). "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (alternations in original) (internal quotations and citations omitted).

When this lawsuit was filed—on January 31, 2014—Rule 4 of the Federal Rules of Civil Procedure provided that:

> If a defendant is not served within 120 days after the complaint is filed, the court -
> - on motion or on its own after notice to the plaintiff -- must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time. But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (2015).[2] In evaluating good cause, courts consider "(1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." *Lenhard v. Colorgraphics of Rochester*, No. 6:15-CV-06166 MAT, 2015 WL 5022386, at *1 (W.D.N.Y. Aug. 24, 2015) (internal quotation marks and citations omitted).

---

[1] It is not settled whether the Eleventh Amendment creates a jurisdictional bar or simply an affirmative defense. *See Warburton v. John Jay Coll. of Criminal Justice of City Univ. of New York*, No. 14-CV-9170 JPO, 2015 WL 3948107, at *3 (S.D.N.Y. June 29, 2015). To the extent it creates only an affirmative defense, however, the Court may and does consider it under Rule 12(b)(6), because the facts necessary to do so are apparent on the face of the complaint. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

[2] An amendment—effective on December 1, 2015—reduced the time a plaintiff has to serve defendants from 120 days to 90 days.

Von Britton filed his original complaint on January 31, 2014 (ECF No. 1), and his FAC on May 14, 2014. (ECF No. 7.) Also on May 14, 2014, Von Britton requested that the Clerk issue summonses for Chapdelaine, Osborn, and UCONN Health Center, and the Clerk did so on May 15, 2014. (ECF Nos. 8-10.) On July 23, 2014, Von Britton filed the First Affidavit of Service for Summons, dated July 14, 2014. (ECF No. 13). The affidavit shows that a Connecticut state marshal served Osborn, Chapdelaine, and UCONN Health Center by leaving the summonses and copies of the FAC with their common agent, Margaret Q. Chapple, Associate Attorney General. (*Id*.) On August 27, 2014, Steven M. Barry, an Assistant Attorney General from the Connecticut Office of the Attorney General, filed an appearance on the docket as counsel for Osborn, Chapdelaine, and UCONN Health Center. (ECF No. 14.) Von Britton added the medical doctors as defendants for the first time in the SAC, which he filed on the docket on May 11, 2015. (ECF No. 33.) As of this ruling, over 240 days have elapsed since Von Britton filed the SAC on May 11, 2015, and Von Britton has not demonstrated *any* efforts—much less diligent ones—to serve the medical doctor defendants. Not only is there nothing on the docket to suggest that Von Britton served the SAC on any of the medical doctor defendants, there is also nothing on the docket to suggest that Von Britton ever requested any of the following: a summons from the Clerk's office, a waiver of service from the medical doctor defendants, or any extensions of time from the Court to complete service. Because Von Britton has not articulated *any* justification for the Court to grant an extension of time to serve the medical doctor defendants, he has certainly not shown "good cause" for an extension. *Jordan v. Forfeiture Support Associates*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013) ("Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely

manner was the result of circumstances beyond [her] control.") (citations and quotation marks omitted).

Even in the absence of good cause, however, "district courts may exercise their discretion to grant extensions under Rule 4(m) . . . ." *Zapata v. City of New York*, 502 F.3d 192, 193 (2d Cir. 2007); *see* Fed.R.Civ.P. 4(m) advisory committee's note (1993 Amendments). "The factors to be considered in deciding whether to grant this relief are (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Morris v. Ford Motor Co.*, No. 07-CV-424S, 2009 WL 2448473, at *3 (W.D.N.Y. Aug. 7, 2009) (internal quotation marks and citations omitted). The Second Circuit has directed that:

> Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice, we will not find an abuse of discretion in the procedure used by the district court, so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties.

*Zapata,* 502 F.3d at 197. "But in the absence of good cause, no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Id.* at 198.

The Court will weigh the impact of a dismissal on the parties. If the Court were to dismiss the SAC against the medical doctor defendants for failure to serve them, the statute of limitations would bar future actions against them. "When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." *Walker v. Jastremski,* 159 F.3d 117, 119 (2d Cir.1998). Von Britton alleges that the Defendants violated his constitutional rights

prior to his release from prison on January 31, 2011 (SAC ¶ 24), and he did not file the original

complaint until three years later, on January 31, 2014. (ECF No. 1.) [3] The limitations period is

tolled for the 120-day service period, *Zapata*, 502 F.3d at 199, but it restarts at the end of the

service period, and therefore, it has now expired. Thus, even if the Court were to dismiss the

claims against the medical doctor defendants "without prejudice, it effectively would result in

dismissal with prejudice because any newly filed claims would be time-barred." *Fowler v. City

of New York*, No. 13-CV-2372 (KAM) (RML), 2015 WL 9462097, at *6 (E.D.N.Y. Dec. 23,

2015). Thus, the first factor weighs in favor of granting Von Britton an extension of time to serve

the SAC on the medical doctor defendants.

      The second factor is whether the defendants had actual notice of the Plaintiff's claims.

This factor also favors Von Britton. Here, counsel for the named medical doctor defendants had

actual notice of Von Britton's claims against them because, since it filed its appearance on

August 27, 2014, the Connecticut Office of the Attorney General has received electronic notices

of filings in this case, including the filing of the SAC. The third factor favors the Defendants;

there is nothing to suggest that Defendants attempted to conceal the defects in service. In fact,

---

[3] Although Defendants argue that the claims against the medical doctor defendants are time-barred because Von Britton did not file the SAC—which alleged claims against the medical doctor defendants—until May 11, 2015, more than three years after the alleged unconstitutional conduct, Plaintiff's claims would likely relate back to the filing of his original complaint. *See* Fed.R.Civ.P. 15(c). An amendment that "changes the party or the naming of the party against whom a claim is asserted" "relates back to the date of the original pleading" when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading" and

> within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c).

they raised it promptly in their renewed motion to dismiss. Finally, the medical doctor defendants may experience some prejudice from the lack of service. *Zapata,* 502 F.3d at 198 ("prejudice to the defendant . . . arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service."). Thus, the balance of hardships slightly favors Von Britton.

"[T]he fact that the balance of hardships favors the plaintiff does not *require* the district judge to excuse the plaintiff's failure to serve the complaint and summons within the 120 days provided by the rule." *Zapata*, 502 F.3d at 198 (citation and internal quotation marks omitted). The Court recognizes that there is a "strong federal policy in favor of resolving claims on the merits." *John v. City of Bridgeport*, 309 F.R.D. 149, 156 (D. Conn. 2015). Nevertheless, after weighing various factors, the Court declines to exercise its discretion to allow Von Britton additional time to serve the medical doctor defendants. *See Fowler*, 2015 WL 9462097, at *7 ("despite the very serious allegations in the Complaint, counsel's ongoing disregard of the basic procedures required to effect proper service – and thereby confer personal jurisdiction over the individual defendants in this court – offsets any benefit in plaintiff's favor"). In *Zapata,* the Second Circuit affirmed a district court's denial of the plaintiff's motion for extension of time to serve the complaint, even though the denial meant that the plaintiff's claims were time-barred. *Zapata,* 502 F.3d at 197. Like *Zapata,* in this case, the plaintiff has "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and . . . advanced no cognizable excuse for the delay." *Id.* at 199. Moreover, Von Britton has *never* requested any extension of time to complete service, even after the Defendants' moved to dismiss the medical doctor defendants under Rule 12(b)(5) for failure to serve. (ECF No. 35 at 1-2.) Von Britton is represented by licensed attorneys, "and it was incumbent on th[ose]

attorney[s] to protect plaintiff's rights by seeing to it that the complaint was properly served in a timely manner. To the extent that that was not done, the fault lies not with the defendants or with the Court, but with plaintiff's counsel." *Carl v. City of Yonkers*, No. 04 CIV. 7031 (SCR), 2008 WL 5272722, at *7 (S.D.N.Y. Dec. 18, 2008); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sun*, No. 93 CIV. 7170 (LAP), 1994 WL 463009, at *4 (S.D.N.Y. Aug. 25, 1994) ("For though leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger."). Therefore, Von Britton's claims against the medical doctor defendants are dismissed without prejudice for lack of proper service under Rule 12(b)(5).[4]

### C.  Rule 12(b)(6) Failure to State a Claim  Against Chapdelaine Individually

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. Under *Twombly*, the Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations

---

[4] The Court notes that Von Britton's claims against the medical doctor defendants would also fail on the merits, because Von Britton does not allege facts sufficient to show the subjective element of deliberate indifference, *i.e.*, that the medical doctors were aware of and consciously disregarded a serious risk to his health. *See* Part C.2., *infra*.

to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).

Von Britton alleges that the "denial of proper medical treatment," "permanently deprived [him] of both his liberty without due process of law, and his right to equal protection of the laws . . . in violation of the Fifth, Eight[h] and Fourteenth Amendments of the Constitution . . . ." (SAC ¶ 37.) Although the SAC does not expressly state that Von Britton is suing Chapdelaine in her individual capacity, to the extent that he is, Von Britton fails to state a claim under Rule 12(b)(6) because the SAC does not sufficiently allege that Chapdelaine was personally involved in any constitutional deprivation or that Chapdelaine has caused him to suffer from a constitutional deprivation.

### 1.  Personal Involvement of Chapdelaine

Von Britton fails to allege facts sufficient to show that Chapdelaine was personally involved in a constitutional deprivation. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted). "Although the Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), may have heightened the requirements for showing a supervisor's personal involvement with respect to certain

constitutional violations," the Second Circuit has not yet addressed this issue. *Grullon*, 720 F.3d at 139. "Furthermore, the majority of district courts in this Circuit that have addressed the question have found that absent any contrary directive from the Second Circuit, all five *Colon* factors survive[.]" *Cano v. City of New York*, 44 F. Supp. 3d 324, 336 (E.D.N.Y. 2014) (citations and internal quotation marks omitted).

Von Britton fails to allege facts showing the direct or personal involvement of Chapdelaine. He does not allege that Chapdelaine was aware or should have been aware of his symptoms or how the medical doctors treated him. Instead, Von Britton alleges only that Chapdelaine, as the warden, "generally controlled, managed, and oversaw any and all decisions as to medical care, transport, treatment, and availability of said treatment." (SAC ¶ 30.) This broad and conclusory statement is not sufficient to state a claim for supervisory liability. "[A] defendant cannot be held personally responsible merely because he or she was in a high position of authority." *Scaggs v. New York Dep't of Educ.*, No. 06 CV 0799 (JFB) (VVP), 2007 WL 1456221, at *17 (E.D.N.Y. May 16, 2007) (citation omitted); *Tricoles v. Bumpus*, No. 05CV3728 (JFB) (JO), 2006 WL 767897, at *4 (E.D.N.Y. Mar. 23, 2006) ("Here, the complaint does nothing more than allege that the Commissioner failed to supervise or train and/or established a custom or policy that resulted in the constitutional injury. These broad allegations, with no specific allegations of personal involvement by the Commissioner, are too vague and conclusory to state a claim."); *Vazquez v. Parks*, No. 02CIV1735 (LAK) (HBP), 2003 WL 1442087, at *9 (S.D.N.Y. Feb. 4, 2003) ("In order to survive a motion to dismiss, a plaintiff alleging a Section 1983 . . . claim must set forth specific and detailed factual allegations of personal involvement as opposed to bald assertion[s] and conclusory terms.") (internal quotation marks and citations omitted).

Von Britton does not allege any specific facts indicating that Chapdelaine: (1) participated directly in Von Britton's medical care; (2) was aware of any complaints or allegations of constitutional violations; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such polices or customs to continue[5]; (4) was grossly negligent in supervising the doctors who allegedly committed the wrongful acts of failing to diagnose Von Britton with diabetes; or (5) was deliberately indifferent to Von Britton by failing to act on information indicating that unconstitutional acts were occurring. Because Von Britton has failed to allege specific facts demonstrating the personal involvement of Chapdelaine in any constitutional deprivation, the Court dismisses his claim for damages against Chapdelaine in her individual capacity for failure to state a claim upon which relief may be granted.

### 2. Deliberate Indifference under the Eighth Amendment

Although the Court has already concluded that the allegations against Chapdelaine fail to allege personal involvement, it nonetheless addresses, in the alternative, the adequacy of the allegations of a constitutional violation. Von Britton alleges that Chapdelaine was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (SAC ¶ 41.) "The standard of deliberate indifference includes both subjective and objective components." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

#### a. Objective Element

"To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "He must first show that his medical condition is objectively a

---

[5] Von Britton alleges "that the only viable rationale for said denial of treatment was part and parcel of an ongoing plan to cut costs with regard to the treatment of prisoners." (SAC ¶ 45.) This conclusory statement is not sufficient to allege that Chapdelaine created—or allowed to continue—a policy or custom of unconstitutional practices.

serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (citations and internal quotation marks omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock*, 315 F.3d at 162. Nevertheless, the Second Circuit has endorsed "a non-exhaustive list of factors," including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (internal quotation marks and citations omitted).

If, as here, "the unreasonable medical care is a failure to provide *any* treatment for an inmate's medical condition, courts examine whether the inmate's [underlying] medical condition is sufficiently serious." *Roberts v. C-73 Med. Dir.*, No. 1:14-CV-5198-GHW, 2015 WL 4253796, at *4 (S.D.N.Y. July 13, 2015) (*quoting Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir. 2006) (emphasis added)). "Courts have found that diabetes is a sufficiently serious medical condition," *id.*, and it is certainly serious if left undiagnosed and untreated. *See Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) ("Diabetes is a common yet serious illness that can produce harmful consequences if left untreated for even a relatively short period of time.") (citing Diabetes in America 5 (Maureen I. Harris et al. eds., 2d ed.1995), available at http://www.diabetes.niddk.nih.gov). Von Britton also alleges that the failure to diagnose his diabetes led to the need to amputate his left leg. A reasonable doctor or patient would perceive the need to amputate a leg as important and worthy of treatment. Moreover, the amputation of a leg would significantly affect the amputee's activities. In Von Britton's case, the amputation left him

15

wheel-chair bound and with limited mobility. (SAC ¶ 40.) Thus, Von Britton's condition was objectively serious.

### b.  *Subjective Element*

Under the subjective element, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety. Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Schult*, 717 F.3d at 125 (internal citations and quotation marks omitted). But, "[t]o meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994))."

Von Britton does not allege facts sufficient to show the subjective element of deliberate indifference, that Chapdelaine was aware of and consciously disregarded a serious risk to his health. *Harrison*, 219 F.3d at 137 ("To establish deliberate indifference, the plaintiff must prove that the prison official knew of and disregarded the plaintiff's serious medical needs.") (citations and internal quotation marks omitted). Von Britton does not specifically allege that he complained of *any* symptoms to *any* of the Defendants during the period of his incarceration. Although he generally alleges that he "was subjected to the pains of a terribly high blood sugar level . . . which include but are not limited to dryness of mouth, frequent urination, muscular pain, headaches, dizziness, organ failure, low circulation, loss of sensation and numbness," (SAC ¶ 37), Von Britton does not allege that he complained of such symptoms to *any* of the Defendants at *any* time. The SAC states only that "he complained of symptoms which were quickly diagnosed upon his release as diabetes." (*Id.* ¶ 44.) It is not clear when or to whom he made such complaints. Von Britton does not allege that he made any of the Defendants aware that he was experiencing symptoms of diabetes, nor does he allege that they refused to treat or

16

test him for diabetes, despite his complaints. The SAC alleges that "the use of a glucometer is . . . a common medical practice in any medical exam" (*id.* ¶ 42), and "a thorough medical exam at Osborn['s] . . . medical clinic should have included a screening for diabetes and high blood sugar as part of its standard operating procedure." (*Id.* ¶ 35). But a medical decision whether or not to order a specific diagnostic test is a matter of medical judgment and does not rise to the level of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Farmer*, 511 U.S. at 838 ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment"). Thus, Von Britton has failed to allege facts that would establish the subjective element of deliberate indifference. Von Britton's "allegations, at most, amount to medical malpractice, and such allegations are not sufficient to state a § 1983 claim under the Eighth Amendment." *Jones v. Vives*, 523 F. App'x 48, 50 (2d Cir. 2013) (summary order); *Estelle*, 429 U.S. 97, 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").[6]

### 3.  Equal Protection Clause

---

[6] For these reasons, Von Britton also fails to allege a violation of the Due Process clause. "To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. Merely negligent conduct does not give rise to claims under the Fourteenth Amendment." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (internal citations omitted).

The Equal Protection clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Associates v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Von Britton fails to allege that he is a member of any protected class or that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," which is necessary to state a "class of one" equal protection claim. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (citations and internal quotation marks omitted). Because Von Britton fails to identify any similarly situated comparators who were treated differently, he fails to allege a violation of the Equal Protection Clause of the Fourteenth Amendment.

### D. State Law Claims

Because the Court grants Defendants' motion to dismiss Count One, it declines to exercise supplemental jurisdiction over Von Britton's state law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); 28 U.S.C. § 1367(c)(3). Counts Two, Three, and Four are therefore dismissed without prejudice to refiling them in state court.

## IV.   CONCLUSION

Count One is dismissed against the medical doctor defendants without prejudice for failure to properly serve them under Rule 12(b)(5). Von Britton's Section 1983 claims for money damages from Osborn and UCONN Health Center, and from Chapdelaine in her official capacity, are barred by the Eleventh Amendment and are therefore dismissed. To the extent that Von Britton alleges a Section 1983 claim for money damages from Chapdelaine in her individual capacity, it fails to state a claim under Rule 12(b)(6) because the SAC does not sufficiently allege that Chapdelaine has caused a constitutional deprivation, or that Chapdelaine was

personally involved in any constitutional deprivation. Thus, claims against Chapdelaine in her individual capacity are also dismissed. Because the Court grants Defendants' motion to dismiss Count One, it declines to exercise supplemental jurisdiction over Von Britton's state law claims, and Counts Two, Three, and Four are dismissed without prejudice to refiling them in state court. The Clerk is directed to enter judgment dismissing this case.

IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
             January 25, 2016